UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ALVIN RODRIGUEZ,

      Petitioner,

  - against -

WILLIAM BROWN, Superintendent, Eastern
New York Correctional Facility,

      Respondent.
---------------------------------------------------------- X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ SEP 13 2011 ★
BROOKLYN OFFICE

**MEMORANDUM**
**DECISION AND ORDER**

11-CV-1246 (BMC)

**COGAN**, District Judge.

  In this habeas corpus petition brought pursuant to 28 U.S.C. § 2254, petitioner raises three points of error with regard to his state court conviction: (1) he was denied due process by the failure of the police to videotape the interrogation that culminated in his confession; (2) his trial counsel was ineffective on multiple grounds; and (3) he was denied due process and an impartial jury because the trial court failed to administer a proper oath to the jurors.

  Familiarity with the facts is assumed, but to summarize, petitioner's conviction arose out of a gang-related dispute. After exchanging words with the victim (McCormock), petitioner shot him in the head from two to eighteen inches away, killing McCormock instantly. A fellow gang member who witnessed the shooting (Jean-Baptiste) identified petitioner as the shooter. After trial, a jury convicted petitioner of murder in the second degree under New York Penal Law § 125.25, and the court sentenced him to a term of imprisonment of twenty years to life.

  Additional facts will be set forth below as they relate to each of petitioner's points of error. None of them have merit and the petition is accordingly denied.

## I. Ground One: Denial of Due Process by Failing to Videotape Interrogation

Petitioner confessed twice after his arrest: first to a detective, who wrote out petitioner's statement verbatim, and again on videotape to an assistant district attorney. He claims that, because his interview and resulting confession to the detective were not videotaped, his due process rights were violated. The Appellate Division held this argument "unpreserved for appellate review and, in any event . . . without merit." People v. Rodriguez, 68 A.D.3d 789, 789, 888 N.Y.S.2d 894 (2d Dep't 2009) (internal citations omitted), leave to app. denied, 14 N.Y.3d 804, 899 N.Y.S.2d 139 (2010).

When a state court has determined that a claim is procedurally defaulted, a federal court will generally not address the merits of that claim. See Harris v. Reed, 489 U.S. 255, 262, 109 S. Ct. 1038 (1989). "Federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)) (internal quotation marks omitted). Therefore, a state court's finding that a procedurally-barred claim is also meritless does not create an opportunity for federal review.

To receive federal review of a procedurally-barred claim, a petitioner must overcome the procedural default based on state law by showing either "cause for the default and prejudice attributable thereto, or . . . that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris, 489 U.S. at 262 (internal quotation marks and citations omitted). To meet the cause-and-prejudice requirement for overcoming a procedural default, the petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Coleman v. Thompson, 501 U.S. 722, 753, 111 S. Ct.

2

2546 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639 (1986)) (internal quotation marks omitted). A petitioner who attempts to overcome a procedural default under the fundamental miscarriage of justice standard must show that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Carrier, 477 U.S. at 496.

Petitioner has not attempted to overcome the procedural bar. He has not shown or even alleged (a) "cause" for the default and "prejudice attributable thereto" or (b) that failure to review his claim may result in a "fundamental miscarriage of justice." Although petitioner raised numerous allegations of ineffective assistance in the state courts, and has reasserted some of them here, nowhere has he alleged that his counsel was ineffective for failing to challenge the lack of a videotape of his confession. Therefore, this claim is procedurally barred.

Even in the absence of a procedural bar, however, petitioner's claim would fail on the merits. Neither federal nor state law requires videotaping of interrogations. See Linnen v. Poole, 766 F. Supp. 2d 427, 453-55 (W.D.N.Y. 2011) (collecting cases).

## II. Ground Two: Ineffective Assistance of Trial Counsel

### A. *Failure to Seek Disqualification of Jurors*

Two of the claims of ineffective assistance that the Appellate Division rejected on the merits on direct appeal, and that petitioner raises here, stem from a single incident: during the trial, it came to light that one of the jurors had learned of an incident in an Atlanta courthouse in which a lawyer and judge were shot. Petitioner claims that his counsel was ineffective because: (1) he did not insist on the disqualification of this juror; and (2) he did not insist on the questioning of the jurors individually as to possible bias arising from this incident.

3

The incident emerged when, during a day off from trial, one of the jurors (Juror No. 1) called the Court to ask if additional security was going to be deployed in light of the Atlanta shooting. When court reconvened, the trial court and defense counsel questioned this juror *in camera* very pointedly and completely; defense counsel was an active participant in the questioning. The juror repeatedly assured both defense counsel and the trial court that he understood that the shooting in Atlanta had nothing to do with petitioner's guilt or innocence and that it would in no way affect his deliberations; he had only been concerned as a general matter with security in the courthouse. However, when Juror No. 1 was asked whether the Atlanta incident had been discussed in the jury room, he responded that it had, in the same context as he had considered it (i.e., courthouse security), because there was a headline in the newspaper.

The trial court and both lawyers then conferred about what to do with the rest of the jurors. The expressed concern was that questioning each one individually would heighten the likelihood that the Atlanta incident could unnerve one or more jurors who might have otherwise been unaffected. The trial court therefore determined that it would question the jury as a whole, and it adopted the suggestions of defense counsel in their totality as to how the inquiry should be framed. Specifically, the trial court asked the jurors if they were aware of any recent events reported in the media that might affect their ability to be fair and impartial. The trial court advised the jurors that if anyone felt that way, that juror or jurors should send him a note so they could discuss it further. The trial court reminded the jurors that they had taken an oath to remain fair and impartial and to exclude any outside information from entering into their consideration of the facts of the case. No jurors expressed any concern about the incident.

Because the Appellate Division rejected these two claims on the merits, my review is limited to the question of whether its decision was "contrary to, or involved an unreasonable

4

application of," any Supreme Court decision. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 404-05, 120 S. Ct. 1495 (2000). The applicable standard for an ineffective assistance of counsel claim is Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984). That case requires a showing of both "deficient performance by counsel," viewed objectively, and "prejudice" to the defendant. Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1413 (2009).

Viewed against this standard, the Appellate Division's decision was neither contrary to nor an unreasonable application of Strickland. As to the possible disqualification of Juror No. 1, the Appellate Division could reasonably have concluded that an objectively reasonable defense lawyer would not have moved to disqualify the juror because there was no indication of bias whatsoever and such a motion would therefore have been denied. See United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008) (failure to make a futile motion is not ineffective assistance). Because a motion to disqualify the juror would have been properly denied, the Appellate Division could also reasonably have concluded that petitioner was not prejudiced. As there was no showing of objective unreasonableness or prejudice, the Appellate Division did not unreasonably apply Strickland.

The same is true of trial counsel's decision not to demand individual inquiries of each juror. The Appellate Division could reasonably view this as a tactical decision in which counsel concluded that the possibility of creating bias by individual inquiries outweighed the benefits of obtaining information by a general inquiry. Reasoned, tactical decisions of trial counsel are generally not subject to attack under Strickland. See, e.g., Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005). The Appellate Division's decision to reject this claim was therefore not an unreasonable application of or contrary to Strickland.

## B. Failure to Object to Interested Witness Charge

In its charge to the jury, the trial court instructed as follows:

> Although not required to do so, defendant in this case testified on his own behalf. His testimony should be considered by you as you would the testimony of any other witness. A defendant is, of course, an interested witness, interested in the outcome of the trial. You may, as jurors, wish to keep such interest in mind in determining the weight and credibility to be given to his testimony. You should not, however, request or reject the testimony of the defendant merely because of his interest. It is your duty as in the case of all witnesses to accept the testimony of the defendant you believe to be truthful and reject such testimony you believe to be false.

This instruction appears to be standard in New York practice. See 1 NY CTJNY § 6:5 (last updated October 2010), available at http://www.nycourts.gov/cji/5-SampleCharges/CJI2d.Final_Instructions.pdf; People v. Agosto, 73 N.Y.2d 963, 967, 540 N.Y.S.2d 988 (1989).

Since petitioner's trial, however, there have been two cases arising out of federal prosecutions in which the Second Circuit, interpreting Supreme Court precedent, reversed a conviction or found harmless error based on instructions that singled out a defendant's interest through an interested witness charge. See United States v. Brutus, 505 F.3d 80 (2d Cir. 2007); United States v. Gaines, 457 F.3d 238 (2d Cir. 2006).[1] In these cases, the Court interpreted the Supreme Court's decisions in Reagan v. United States, 157 U.S. 301, 15 S.Ct. 610 (1895), and Hicks v. United States, 150 U.S. 442, 14 S.Ct. 144 (1893), and held that certain language commonly included in interested witness charges improperly dilutes the presumption of innocence. See Brutus, 505 F.3d at 86; Gaines, 457 F.3d at 245-46.

In the instant case, the issue is not whether the interested witness charge that was given

---

[1] In Blake v. Kirkpatrick, No. 08 Civ. 9288, 2009 WL 536508 (S.D.N.Y. March 4, 2009), then-District Judge Lynch declined to apply Gaines in a habeas corpus case under 28 U.S.C. § 2254 on the ground that, *inter alia*, Gaines invoked the Second Circuit's supervisory power over federal prosecutions rather than announcing a principle of constitutional law. However, Blake did not cite Brutus, which squarely held that "the district court's error [in instructing the jury to scrutinize the defendant's interest] affected the presumption of innocence, and was therefore constitutional error . . . ." Brutus, 505 F.3d at 88.

6

undermined petitioner's right to the presumption of innocence. Rather, the issue is whether the Appellate Division's decision that his trial counsel's failure to object to the interested witness instruction was an unreasonable application of Strickland. For several reasons, I hold that the Appellate Division did not unreasonably apply Strickland.

First, both Brutus and Gaines were decided after petitioner's trial. Prior to that time, both in the state courts and even in the federal district courts within the Second Circuit, it was common to use interested witness instructions when defendants testified; both the Second Circuit and the Supreme Court had upheld various versions of the instruction on a number of occasions. See Reagan v. United States, 157 U.S. 301, 305 (1895); Hicks v. United States, 150 U.S. 442, 451-52 (1893); United States v. Gleason, 616 F.2d 2, 15-16 (2d Cir. 1979); United States v. Tolkow, 532 F.2d 853, 859 (2d Cir. 1976). Petitioner's trial counsel did not need to anticipate Gaines, for a trial lawyer is not required to have a crystal ball and predict changes in the law in order to render effective assistance. See Ellis v. United States, No. 10-4017, 2011 WL 3664658, at *15 (E.D.N.Y. June 3, 2011). The Appellate Division could therefore reasonably have held that trial counsel's failure to challenge the instruction was not objectively unreasonable.

Second, the interpretation of Supreme Court precedent that Gaines undertook was complex, and indeed changed the practice of many federal district judges. The Circuit itself noted the difficulty of reconciling its holding in Gaines with its own prior holdings, and acknowledged the inconsistency between Supreme Court precedents on the issue. See Gaines, 457 F.3d at 245-47. In Brutus, the Court went so far as to overrule prior Second Circuit precedent of long standing. Brutus, 505 F.3d at 87 & n.5 ("The principle underlying Gaines, however, leads us now to reject the instruction we once approved in Tolkow and to overrule that holding. We also abandon our holding in Floyd to the extent that it is inconsistent with this

7

opinion.").

It must again be emphasized that the issue on §2254 review is not what the Second Circuit says the Constitution requires, or even necessarily what the Second Circuit says the Supreme Court has required as a matter of constitutional interpretation, but rather whether "clearly established" Supreme Court precedent is inconsistent with the state court's decision. See Williams v. Taylor, 529 U.S. 362, 381-82 (2000). Concededly, when the Second Circuit finds clear Supreme Court precedent on any particular point, its interpretation of that precedent is binding on this Court in reviewing a §2254 petition. However, when the Second Circuit acknowledges that Supreme Court authority on the relevant issue is not clearly established, as it did in Gaines, the likelihood is increased that the state court's earlier view of the issue will not support relief under §2254. Thus, the complexity of the analysis that the Second Circuit undertook in Gaines and Brutus compels the conclusion that the Appellate Division did not unreasonably assess trial counsel's failure to object under Strickland.

Finally, even if trial counsel had objected to the interested witness charge, the Second Circuit would likely have upheld the charge as consistent with Supreme Court's decisions in Reagan and Hicks. See Herndon v. United States, 359 F. App'x 241, 244 (2d Cir. 2010) (affirming conviction notwithstanding instruction that "[a] defendant has a personal interest in the outcome of the case," although noting that there is no reason to give such an instruction). The critical defect in the interested witness charges struck down by Brutus and Gaines was a statement to the jury that defendant's interest in the outcome of the case created a motive for defendant to give false testimony. Brutus, 505 F.3d at 87; Gaines, 457 F.3d at 246. The Court reasoned that this statement undermines the presumption of innocence because it relies on an inference that defendant is guilty. The jury charge here, on the other hand, contained no such

statement.

The charge here merely stated that petitioner had an interest in the outcome of the case and that the jury could take that interest into account when determining credibility. In Brutus, the Second Circuit expressly approved a jury instruction which stated that the defendant was a "witness with an interest in the outcome of a case." 505 F.3d at 88 & n.7. The reference to petitioner's interest was therefore appropriate under Brutus, and the charge did not include any of the language deemed to be prejudicial by Brutus and Gaines: it did not classify petitioner's interest as "deep" or "vital"; it did not instruct the jury to treat petitioner differently than any other interested witness; and it did not invite the jury to approach petitioner's testimony with skepticism as a result of his interest. Compare Brutus, 505 F.3d at 85, 87 (Rejecting an interested witness charge because it stated that "a defendant who does testify on her own behalf obviously has a deep personal interest in the outcome of her prosecution. It's fair to say that the interest which a defendant has in the outcome of the case is an interest which is possessed by no other witness. And such an interest creates a motive to testify falsely."); Gaines, 457 F.3d at 242 (Rejecting an interested witness charge because it stated that, "[o]bviously, the defendant has a deep personal interest in the result of his prosecution. This interest creates a motive for false testimony and, therefore, the defendant's testimony should be scrutinized and weighted with care.").

Here, the trial court, prior to giving the interested witness instruction, repeatedly referred to and defined the presumption of innocence; the never-shifting burden on the prosecution to prove guilt beyond a reasonable doubt; and the fact that petitioner's decision to testify did not result in any dilution of this presumption and burden. See Blake v. Kirkpatrick, No. 08-9288, 2009 WL 536508, at *4 (S.D.N.Y. March 4, 2009) (denying § 2254 relief where instruction was

almost identical to that given here). The Appellate Division therefore did not unreasonably apply Strickland in rejecting petitioner's ineffective assistance claim on these points.

### C. Failure to Object to Prosecutor's "Vouching" for Witnesses

During closing argument, the prosecutor gave reasons (by referring to the evidence at trial) as to why the jury should believe the prosecutor's witnesses and disbelieve petitioner's testimony. This included references to each of the witness's respective interests. Petitioner contends, apparently with regard to the prosecution's witnesses, that this constituted the practice of "vouching," which is prohibited under New York law, and that his trial counsel was ineffective for failing to object to it. The Appellate Division rejected this claim on the merits, and thus the scope of my review is whether its decision was contrary to, or an unreasonable application of, Strickland.

The Appellate Division's rejection of the "vouching" basis for petitioner's ineffective assistance claim was not an unreasonable application of Strickland because, in fact, there was no vouching during the prosecutor's closing argument. Vouching, under New York law, refers to the prosecutor acting as an unsworn witness in order to tie his own credibility to that of the witness. See People v. Moye, 12 N.Y.3d 743, 744, 879 N.Y.S.2d 354 (2009) (citing People v. Lovello, 1.N.Y.2d 436, 439, 154 N.Y.S.2d 8 (1956)). I have reviewed the closing argument here, and vouching never happened. The prosecutor simply marshaled the evidence and pointed out permissible inferences regarding witness credibility. He never put his own credibility on the line or even referred to his own evaluation of the evidence he marshaled. Moreover, his statements as to why the jury should find certain witnesses credible and petitioner not credible were in direct response to the contrary arguments that petitioner's counsel made; even if he had slipped an "I think" or "I believe" into his argument, which he did not, such references would

10

have been permissible in response to a defendant's arguments. See, e.g., Charlemagne v. Goord, No. 05- 9890, 2008 WL 2971768, at *23 (S.D.N.Y. June 30, 2008). Any objection by petitioner's counsel would therefore have been properly denied.

The Appellate Division thus did not unreasonably apply Strickland in rejecting petitioner's claim on this point, as he showed neither objective unreasonableness nor prejudice.

### D. Failure to Challenge Probable Cause for Petitioner's Arrest

Petitioner was arrested approximately two years after the crime, following a lengthy police investigation. He apparently had a prior criminal record, and as a result, the police had a photograph of him on file, together with statements of a witness identifying him as the perpetrator and another witness placing him at the scene. However, under New York law, apparently, the police could not publicize that photograph without a court order. A detective, Rivera, and an assistant district attorney, applied by affidavit for a court order to release the photograph, which was granted. The photograph was then circulated on a "wanted" poster, and petitioner was arrested after a witness saw it and called the police.

Petitioner contends that his attorney should have moved to "challenge the affidavit" in support of the motion to unseal the photograph. Petitioner also contends that, because the "wanted" poster led to his arrest, his counsel should have asserted a lack of probable cause for his arrest. From there, he reasons that all evidence obtained as a result of his arrest, including, at least, his two confessions (transcribed and videotaped), would have been suppressed. I will refer to this claim as the "failure to seek suppression" claim.

The basis for petitioner's argument is twofold. First, the primary witness upon whom the detective relied to obtain the unsealing warrant, Jean-Baptiste, was unreliable. Second, Detective Rivera stated in the affidavit that "the victim has identified [petitioner] in a photo array," yet this

11

was obviously "perjured testimony," according to petitioner, because he had shot the "victim" dead on the day of the incident.

The procedural posture of this claim, and thus the standard of review to be applied on habeas corpus, is a bit complex. Prior to sentencing, petitioner filed a *pro se* motion under N.Y. Crim. Proc. L. §330.10, conclusorily asserting a variety of grounds, including this "perjured testimony" point. At the first day of the sentencing hearing (it was continued so that the assistant district attorney could review and respond to the §330 motion), petitioner augmented his claim by saying that he had received ineffective assistance of counsel when his attorney failed to challenge this "perjured testimony." At the second and final day of the sentencing hearing, when petitioner again explained this claim (among others), his attorney noted that, in his view, Det. Rivera's use of the word "victim" in his affidavit, signed four days after the victim was killed, was an obvious typographical error; Det. Rivera had meant to say that the "witness," rather than the victim had identified petitioner. Petitioner's counsel stated that he thought the point was so obvious that it was not worth raising.

In denying the §330 motion on the merits at sentencing, the trial court rejected the prosecution's argument that this claim should be dismissed because it could only be brought in a proceeding under N.Y. Crim. Proc. L. §440.10. Instead, the court exercised its authority to convert the §330 motion into a §440.10 motion. People v. Rodriguez, 9 Misc. 3d 1127(A), 862 N.Y.S.2d 810 (Sup. Ct. Kings Co. 2005) (citing, among other decisions, People v. Toland, 2 A.D.3d 1053, 770 N.Y.S.2d 148 (3d Dep't 2003)). Although petitioner raised various ineffective assistance claims on direct appeal, he did not appeal the denial of this claim.

Instead, he brought a new motion under §440.10 which again asserted the same claim as one of its grounds for relief. The §440 court held that the claim was procedurally barred because

the sentencing court had already denied the same claim on the merits when it converted the §330 motion to a §440 motion. Petitioner did not appeal denial of this claim.

I conclude that this leaves the claim procedurally barred. Whether it is viewed as a §330 claim or a §440 claim, petitioner's failure to seek leave to appeal leaves the claim unexhausted. Because the time to appeal a ruling on a motion under §330 or §440 has passed, the claim is therefore deemed procedurally barred. See Richardson v. Superintendant of Mid-Orange Corr. Facility, 621 F.3d 196, 201 (2d Cir. 2010) ("When a petitioner can no longer present his unexhausted claims of trial error to the state courts, we deem the claim procedurally barred.") (internal quotation marks omitted); see also Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990). Petitioner has shown neither cause nor prejudice nor manifest injustice that would excuse this procedural default. Indeed, it is noteworthy that he abandoned this claim on direct appeal, despite raising a number of other ineffective assistance claims that were in fact adjudicated on the merits. He has offered no reason why he could not have raised this one. In any event, the sentencing court's conclusion that the claim was without merit was in no way contrary to or an unreasonable application of Strickland. Trial counsel's explanation that Det. Rivera's use of the word "victim" instead of "witness" was merely a typographical error is patently correct. Not only does it constitute a fully defensible tactical decision by trial counsel not to raise the point, but attempting to call and examine Det. Rivera on this point (he did not testify) may well have further undermined petitioner's credibility before the jury. The state courts therefore reasonably applied Strickland, as petitioner failed to show objective unreasonableness on the part of trial counsel or prejudice.

### E. *Failure to Call Potential Witnesses*

In his §330 motion, petitioner complained that his trial counsel had failed to investigate

or call to testify a person named Darren Williams. The sentencing court, after converting the motion to a §440 motion as described above, denied the claim on the merits. Petitioner did not pursue this claim on direct appeal, despite raising other ineffective assistance claims.

In his subsequently filed §440 claim, petitioner reiterated this claim as to Williams and expanded it to include other alleged witnesses that his lawyer should have called, including petitioner's mother and the woman who had called the police to report his whereabouts (Sharay Carrington).[2] Petitioner's former trial counsel submitted an affidavit in response to the §440 motion, explaining why he had chosen not to call these prospective witnesses. The §440 court rejected the ineffective assistance claim as to Williams as procedurally barred, as it had been raised and rejected on the merits in the §330 motion, and rejected the claim as to petitioner's mother and Carrington on the merits. Petitioner did not seek leave to appeal the §440 decision.

This claim as to Williams stands in the same posture as petitioner's failure to seek suppression claim: it is unexhausted but deemed procedurally barred because the time to pursue an appeal under §330 or §440 has expired and there is no further state law avenue with which to pursue the claim. See Richardson, 621 F.3d at 201. Petitioner was in control of his own claims at all relevant points and has offered no cause or prejudice for his failure to pursue his remedies.

Even if I were to reach the merits as to Williams, however, I could not find that the sentencing court's ruling was contrary to or an unreasonable application of Strickland. Petitioner offered no indication of how Williams's potential testimony could have benefitted him. Moreover, the affidavit submitted by petitioner's former counsel in the §440 proceeding demonstrated that his testimony could have been harmful to petitioner's case. Williams had given the police a description of someone who had been in a heated argument with the victim, and the description resembled petitioner. In his affidavit, trial counsel explained that he did not

---

[2] Petitioner also asserted other ineffective assistance claims that he has not pursued in this habeas corpus case.

call Williams as a trial witness because "his description of the shooter strongly resembled that of defendant." Where trial counsel believes that a potential witness's testimony will be "fruitless or even harmful, [his] failure to pursue those investigations may not later be challenged as unreasonable." Greiner v. Wells, 417 F.3d 305, 321 (2d Cir. 2005); see also Curry v. Burge, No. 03-0901, 2007 WL 3097165, at *13 (S.D.N.Y. Oct. 23, 2007) (finding that "it was a reasonable strategic decision for [trial counsel] not to further investigate witnesses . . . who in counsel's view would have . . . been harmful to the defense case").

The same is true of petitioner's mother and Carrington. Petitioner's theory as to his mother is apparently that she would have testified that the police did not call her while they were interrogating petitioner, and this, in turn, would tend to show that his confession was coerced. But, as trial counsel pointed out, petitioner was 23 years old at the time of the interrogation. The police had no obligation to call his mother, and counsel concluded that her testimony, even if admitted, would be irrelevant. As for Carrington, who had called the police to get petitioner arrested, trial counsel saw no benefit and a substantial detriment to calling a witness who obviously had reservations about petitioner that were, at the least, strong enough to warrant turning him in.

The §330 and §440 courts reasonably concluded that trial counsel exercised defensible strategic decision-making in deciding not to call these witnesses at trial. The courts' decisions therefore were not contrary to or an unreasonable application of Strickland.

### III. Ground Three: Defective Jury Oaths

Petitioner alleges that the panel of prospective jurors was not properly sworn in and that this error violated his due process rights and his right to an impartial jury under New York law. Petitioner raised this claim on direct appeal, and the Appellate Division rejected it on the merits.

15

Petitioner failed to raise this claim in his §330 motion or his subsequent §440 motion. This claim is therefore unexhausted and deemed procedurally barred.[3] Petitioner has shown neither cause nor prejudice nor manifest injustice that would excuse this procedural default.

Even if petitioner had exhausted this claim in state court, there would be no basis for federal habeas review. Petitioner cites New York law that provides a particular procedure for swearing in the jury. See N.Y. Crim. Proc. L. § 270.15(1)(a) (once "the names of not less than twelve members of the panel [are] drawn and called," they will "take their places in the jury box and shall be immediately sworn to answer truthfully questions asked them relative to their qualifications to serve as jurors in the action."). But state law violations generally cannot form the basis of federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475 (1991) (explaining that there is no federal habeas relief for state law violations because "a federal court is limited to deciding whether . . . the Constitution, laws, or treaties of the United States" have been violated); Gaskin v. Graham, No. 08-1124, 2009 WL 5214498, at *27 n.9 (E.D.N.Y. Dec. 30, 2009) ("[A]ny violation of New York Criminal Procedural Law § 270.15(1)(a) is a violation of state law, for which petitioner is not entitled to relief.").

Although the constitution generally entitles petitioner to an unbiased jury, see Irvin v. Dowd, 366 U.S. 717, 721-22 (1961), there is no Supreme Court mandate regarding the proper method of administering an oath to a jury. The Appellate Division's dismissal of petitioner's claim therefore could not have been contrary to or an unreasonable application of clearly established Supreme Court precedent. Because there is no federal statutory or constitutional analog to this state law, I cannot grant habeas relief to petitioner. Pinkney v. Senkowski, No. 03-4820, 2006 WL 3208595, at *6 (S.D.N.Y. Nov. 3, 2006) (holding that even if petitioner

---

[3] Additionally, petitioner recently applied to this Court to hold his habeas petition in abeyance so that he could return to state court to exhaust this claim. I denied his motion because he did not make a sufficient showing of merit to warrant a stay under Rhines v. Weber, 544 U.S. 269, 277, 125 S. Ct. 1528 (2005).

demonstrated that the jurors were not properly sworn in, he would not be entitled to habeas relief because "the writ may be granted only to remedy a violation of federal law"). Petitioner is, therefore, not entitled to federal habeas relief for this claim.

## CONCLUSION

The petition is denied, and the case is dismissed. Petitioner has failed to make a substantial showing of the denial of a constitutional right. A certificate of appealability shall not issue. See 28 U.S.C. § 2253. Further, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. The Clerk of the Court is directed to enter judgment and mail a copy of this Order to petitioner *pro se*.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
　　　　September 12, 2011